[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Mary E. Dineen, appeals from the decision of the defendant, the Woodbury Inland Wetlands Agency, approving a permit application submitted by the defendant/applicant, Roderick Taylor, d/b/a Woodbury Ski Racket.
By application dated October 13, 1998, Taylor sought approval to install a steel pipe and electrical conduit for snow making. (Return of Record [ROR], Exhibit A.) The agency approved the application on November 23, 1998, subject to a forty-eight hour notification to the town planner and the placement of sedimentation controls. (ROR, Exh. D.) Dineen now appeals from the agency's approval of Taylor's permit application on the grounds that the agency's action was arbitrary, illegal and in abuse of its discretion in various ways.
General Statutes § 22a-43 governs an appeal from the decision of an inland wetlands agency. "It is fundamental that appellate jurisdiction in administrative appeals is created only by statute and can be acquired and exercised only in the manner prescribed by statute." Munhall v. InlandWetlands Commission, 221 Conn. 46, 50, 602 A.2d 566 (1992). CT Page 10066
"Pleading and proof that the [plaintiff] [is] aggrieved within the meaning of the statute is a prerequisite to the trial court's jurisdiction over the subject matter of the appeal." (Emphasis added.)Munhall v. Inland Wetlands Commission, supra, 221 Conn. 50. General Statutes § 22a-43 (a) provides, in part, "any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to22a-45, inclusive by the . . . municipality or any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action made pursuant to said sections may . . . appeal to the superior court for the judicial district where the land affected is located . . ."
By virtue of her status as an abutting landowner, the court finds Dineen statutorily aggrieved pursuant to General Statutes § 22a-43.
General Statutes § 22a-43 (a) provides, in part, that the appeal may be taken "within the time specified in subsection (b) of section 8-8
from the publication of such regulation, order, decision or action. . . ." The statute further provides that "[n]otice of such appeal shall be served upon the inland wetlands agency and the commissioner."
General Statutes § 8-8 (b), in turn, provides that an "appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published as required by the general statutes."
The record contains a certificate of publication indicating that the agency's decision was published in the VOICES newspaper on December 2, 1998. (ROR, Item E.) On December 15, 1998, service was made upon the town, Taylor and the chairman of the inland wetlands agency, and, on December 16, 1998, service was made upon the commissioner of environmental protection. (Sheriff's Return.) Accordingly, the court finds that this appeal was commenced in a timely manner by service of process on the proper parties.[1]
"In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." (Citations omitted.) Samperi v. Inland Wetlands Agency,226 Conn. 579, 587, 628 A.2d 1286 (1993). CT Page 10067
"In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given." (Internal quotation marks omitted.) Id., 587-88. "The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." (Brackets in original; internal quotation marks omitted.) Id., 587-88.
"[I]t is improper for the reviewing court to reverse an agency decision simply because an agency failed to state its reason for its decision on the record. The reviewing court instead must search the record of the hearings before that [agency] to determine if there is an adequate basis for its decision." (Internal quotation marks omitted.) Id., 588-89.
"[The] . . . substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . [It] imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . (Citations omitted; internal quotation marks omitted.) Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,541-42, 525 A.2d 940 (1987).
As previously set forth, the agency approved Taylor's application on November 23, 1998. The decision stated as follows: "NOW, THEREFORE BE IT RESOLVED that the WOODBURY INLAND WETLANDS AGENCY approves the application submitted by Rod Taylor for pipe installation on Washington Road, Tax Assessor's Map 56, Lot 16B, subject to the following conditions: 1. 48 hour notification to the Town Planner. 2. Sedimentation controls to be in place." (ROR, Exh. D.) CT Page 10068
Specifically, Dineen appeals on the grounds that the reasons given for the agency's decision were not supported by the record, the application was inadequate and inaccurately described the nature and scope of the intended activities, and the agency failed to require Taylor to submit information on his written application sufficient to satisfy the town's inland wetlands regulations. (Appeal, ¶¶ 6(a), (b), (c).) Dineen further alleges that the agency failed to conform to the regulatory procedures governing the issuance of a summary ruling, and to conduct the necessary review to determine whether to issue a summary or plenary ruling, and failed to consider the statutory criteria contained in General Statutes § 22a-41, or § 6 of the regulations. (Appeal ¶¶ 6(d), (e).) Finally, Dineen claims that the proposed snowmaking activity will involve substantial water withdrawals from a watercourse, but, despite this, the agency failed to ascertain how the withdrawals would affect the watercourse and whether the withdrawals would "unreasonably destroy the public trust in the natural resources of the state." (Appeal, ¶ 6(f).)
Dineen contends that, in derogation of its regulations, the agency failed to require Taylor to submit an application containing sufficient written information, and that it issued a summary ruling without conducting the necessary review.
The agency responds that it followed its regulations, it is empowered to interpret those regulations, and that its interpretation is to be accorded deference. The agency maintains that the application sought approval for work already completed, the agency was limited to considering the activities proposed in the application, and the application involved no excavation or any other change to the site.
Taylor concludes that the record and approval of his application demonstrates that all requirements were met, although he disagrees with the agency's characterization of his application as seeking approval for preexisting work only.
The brief of the commissioner of environmental protection observes that § 6.1.e of the inland wetland regulations contains the operative decisional standards to be considered by the agency, and to sustain the agency's decision, the court must determine that the agency did, indeed, consider these standards. The commissioner concludes that "[t]he first question, which must be resolved by reference to the application and the decision of the agency is what precise activities did the Agency permit Mr. Taylor to carry out. The second question, which must be resolved by reference to Section 6.1(g) of the Agency's Regulations, Conn. Gen. Stat. § 22a-41 (a), and the record, is whether the Agency properly considered the application in light of the legal standard for granting CT Page 10069 permits." (Emphasis in original.) (Commissioner's Brief, pp. 8-9.)
Section 6.1 of the Inland Wetlands and Watercourses Regulations of the Town of Woodbury enumerates the factors to be considered in making a final decision on a permit application.[2]
The regulations require the agency to consider the information submitted as part of the application. The application submitted by Taylor states the purpose and description of the proposed activity as: "install 4" steel pipe — snowmaking electrical conduit." (ROR, Exh. A.) The application requests whether any construction, filling, or excavation is proposed, to which Taylor answered "no." (ROR, Exh. A.) To a subsequent question asking whether previous grading, filling, excavation or construction had occurred at the proposed location, Taylor checked "yes." (ROR, Exh. A.) In response to a question regarding the estimated cost and time for completion of the proposed activity, Taylor answered $4,000.00 and one week, respectively. (ROR, Exh. A.)
The application does not clearly state whether it pertains to work already completed, or proposed work, or some combination of the two. While the language of the pre-printed application is drafted to address proposed work, the agency maintains that Taylor's application was for approval of work already completed. Hence, it asserts that its decision to approve the application was directed only to those activities. Taylor disagrees with that assertion, claiming that the approval was directed to both completed work and proposed activities.
The agency conducted three meetings relevant to the issue of Taylor's application. The first was held on October 26, 1998.[3] At that meeting, the agency heard testimony with regard to completed work. (ROR, Exh. D.) The record discloses that Peter Hughes[4] had personally visited the site and that he reported on the project at the October 26, 1998 meeting. Id. The minutes of the October 26, 1998 meeting cite Hughes' observations as follows: "[j]ust inside his property line, he [Taylor] dug a trench up the top of the hill about 500 feet. It is within10-20 feet of the stream. He laid the conduit for electrical and water and buried it over and planted with seed. Peter Hughes feels that about 95% of it is stabilized and growing beautifully. In the process he did push material over the gradient which is hanging at the top of the slope. No soil has gone in the brook so far. He just pushed the brush over. . . . No permits were obtained." Id. The information relayed by Hughes at the agency meeting on October 26, 1998, solely relates to the work that was already completed. Id. The record contains no evidence as to whether Hughes was asked to testify before the agency in response to Taylor's application dated October 13, 1998, or in response to Attorney Keilty's letter also dated October 13, 1998. Following Hughes testimony, the CT Page 10070 minutes indicate that once Taylor got "a plan together" the commissioners were to walk the site. Id.
The description of the proposed activity contained in the application indicates, though not clearly, two activities. (ROR, Exh. A.) The first is installation of a four-inch steel pipe. At the agency meeting on November 9, 1998, Taylor stated that this pipe would be used to supply water to the hydrants. (ROR, Exh. D; Defendant's Exh. 1.) The second activity is the installation of electrical conduit. There is no evidence as to whether this refers to the electrical conduit already installed or whether Taylor was proposing the installation of additional electrical conduit in the future. The decision rendered by the agency is subject to the condition that "[s]edimentation controls be in place." (ROR, Exh. D.) While the agency may have had some concern regarding sedimentation in the completed work, the same concerns could be present when a hole is excavated in the setback for the unit required in the proposed activity. (Defendant's Exh. 1.) Therefore, the condition set forth in the decision provides little insight into whether the agency was approving completed work or proposed activities.
The regulations require the agency to consider "[a]ll evidence offered at or before any public hearing, . . . any reports from other commissions and/or federal, state or local agencies, . . . [and] [t]echnical reports requested by the Agency." (ROR, Exh. G, Reg. 6.1.b., c., d.) In the present case, there is no evidence that any public hearings were held, that any reports were submitted by other commissions or agencies, or that the agency requested any technical reports. Accordingly, the record does not support a finding that the agency considered such evidence or reports.
The regulations also require the agency to consider: "[t]he environmental impact of the proposed action . . . [t]he alternatives to the proposed action . . . [t]he relationship between the short-term uses of the environment and the maintenance and enhancement of long-term productivity . . . [and] [i]rreversible and irretrievable commitments of resources which would be involved in the proposed activity." (ROR, Exh. G, Reg. § 6.1.e.)
The record indicates that Hughes reported at the October 26, 1998 meeting that no soil had yet fallen into the brook as a result of the work already completed, that approximately 95 per cent of the area in which the work occurred was stabilized and that the seed planted in the area was growing well. This information is relevant to the environmental impact of the completed work regarding the control of sediment and erosion problems. (See ROR, Exhibit G, Reg. § 6.1.e (i).) Neither the minutes of the October 26, 1998 meeting, nor later meeting minutes, CT Page 10071 indicate that the agency, itself, ever discussed the condition of Taylor's property where excavations had already occurred. Further, there is no evidence that the membership ever completed a site walk as proposed during the October 26, 1998 meeting.
The record is also sparse with regard to evidence as to the consideration of the environmental impact of the proposed installation of the four-inch pipe. The agency had some question as to the size of the hole required for the installation unit. (ROR, Exh. D; Defendant's Exhibit 1.) At the November 23, 1998 meeting, it was stated that the dimensions of the hole would be 5 x 10 and that the hole would be open for approximately 1/2 to 1 day. (Defendant's Motion to Supplement the Record.) The minutes indicate that if this method was unsuccessful, drilling would be required and that such drilling would have minimal effect upon the wetlands. The evidence does not demonstrate, however, that the agency made any inquiry with regard to the environmental impact of the hole.
With regard to the other requirements of regulation § 6.1.e, (alternatives to the proposed action, the relationship between the short-term uses of the environment and the maintenance and enhancement of long-term productivity, irreversible and irretrievable commitments of resources involved in the proposed activity, and the character and degree of injury to, or interference with, safety, health, or the reasonable use of property), the record contains no evidence that any of these factors were ever considered by the agency with respect to either the work already completed or the proposed activities. Accordingly, the agency failed to follow its regulations in reviewing and approving the application.
The agency's failure to consider the factors set forth in the regulations similarly constitutes a failure to comply with General Statutes § 22a-41 because the factors set forth in the regulations are essentially an elaboration of those in General Statutes § 22a-41, and are embodied in their entirety in § 6.1.e (ROR, Exh. G.) Thus, the record is devoid of any evidence showing that the agency considered the factors enumerated in General Statutes § 22a-41, other than those already discussed, with regard to completed work or proposed activities.
The only record evidence demonstrating that the agency may have considered any of the factors set forth in § 6.1.e of the regulations is the testimony received from Hughes at the October 26, 1998 meeting concerning past work, and evidence provided at the November 23, 1998 meeting concerning proposed activities. While this evidence may be indicative of some level of inquiry on the part of the agency, the record evidence does not support a finding that the agency fully considered the CT Page 10072 required regulatory or statutory factors. Accordingly, the appeal can be sustained upon this ground.
Dineen further contends that the agency's decision is not supported by the record evidence because the agency lacked the necessary evidence to conduct the full review, required by its regulations, prior to rendering a summary ruling, and the existent record evidence does not support the requisite finding of no significant impact or major effect necessary for rendering a summary ruling. In addition, Dineen claims that the agency failed to consider the statutory criteria set forth in General Statutes § 22a-41.
The agency counters that the record supports its action because the record demonstrates that the application and approval were limited to work already completed, its decision was consistent with the factors enumerated in General Statutes § 22a-19, and, based upon the evidence, the agency could have concluded that the completed installation did not constitute a significant activity.[5] The regulations define which activities the agency shall regulate. Because the application did not involve excavation or any changes to the site, however, the agency maintains that the application involved none of these listed activities.
Taylor's position is that the record reflects that all requirements were met with respect to the "true nature of the Application — seeking permit approval for a snowmaking water line, including under the Route 47/Washington Road highway as well as approval for the existing plastic conduit." (Taylor's Brief, p. 6.).
The commissioner contends that the final question is whether the agency's decision is supported by substantial record evidence based upon the cited regulatory and statutory standards. The commissioner emphasizes that the agency classified the application as "summary" and granted the permit subject to conditions, but that this procedure may be employed only if the agency finds that the proposed activity is a regulated activity. The commissioner concludes, therefore, that "the Agency . . . must have determined that the application involved a regulated activity . . . and that interpretation should be accorded some deference." (Commissioner's Brief, p. 8.)
Section 5.3 of the regulations states: "[i]f the Agency finds, on the basis of the evidence before it, that a proposed activity or use does not involve any regulated activity or involves only a permitted use as defined in Section 3, a letter of permission to proceed shall be issued forthwith. This permission shall be subject to limitation or revocation if it is later determined that a regulated activity or non-permitted use is a consequence of that proposed activity." (ROR, Exh. G.) CT Page 10073
The record is devoid of evidence to support the agency's contention that it had determined that the completed activities were not regulated activities pursuant to Section 5.3 of the regulations.
Section 5.4 of the regulations pertains to summary rulings and states: "[i]f the Agency finds that a proposed activity is a regulated activity
not involving significant impact or major effect on the inland wetland or water course, it may allow the activity with or without conditions after initial review, and so inform the Applicant in writing. In order to grant a permit at this stage, the Agency, after full review of the considerations set forth in Section 6.1.a through 6.1.e and other pertinent factors, shall state upon the record reasons for granting the permit with or without conditions. Such statement may include discussion of the considerations and criteria listed in Section 6.1.a. through 6.1.e." (Emphasis added.) (ROR, Exh. G.) Hence, while the regulations permit the commission to issue a summary ruling, this power is conditioned upon the requirement that the commission must undertake a full review of the considerations set forth in Sections 6.1.a through 6.1.e.
The agency failed to state upon the record the reasons that Taylor's application was granted. This, alone, is not a reason for the court to reverse the decision of the commission. See Samperi v. Inland WetlandsAgency, supra, 226 Conn. 588-89; Gagnon v. Inland Wetlands WatercoursesCommission, 213 Conn. 604, 605, 569 A.2d 1094 (1990). The only record of any discussion regarding Taylor's activities, past or proposed, is contained in the minutes of agency meetings and in the audio tape offered as an exhibit by the defendant. (ROR, Exh. D; Defendant's Exh. 1.) Consideration of Taylor's application at the agency meeting on October 26, 1998, commenced with the previously described testimony offered by Hughes on the work that had already taken place. (ROR, Exh. D.) Apparently, Taylor was somewhat tardy for the October 26, 1998 meeting, as the minutes indicate that the agency revisited Taylor's application stating that, "Taylor arrives to further explain what he is requesting for approval." Id. The minutes further reveal that Taylor also wished to install a snowmaking pipe which would necessitate boring beneath Route 47 and the installation of a waterline in the brook to supply the snow guns.
The November 9, 1998 meeting consisted of a discussion regarding Taylor's proposed boring activity under Route 47. (Defendant's Exhibit 1; ROR Exh. D.) The process, as Taylor attempted to describe it, required excavation of a hole in which the machine that pushes the pieces of pipe must be placed. Id. Because Taylor was unable to provide the commission with the size of the hole required for the proposed activity, he was instructed to obtain that information and to return to the meeting on CT Page 10074 November 23, 1998. Id.
On November 23, 1998, Taylor provided the dimensions of the hole required for the machine that would be used to install the pipe. (Dft. Motion to Supplement Record.) The minutes provide that the hole would be temporary, open for approximately 1/2 to 1 day, and would be refilled. Id. Alternatively, drilling would be necessary. The minutes further provide that the ramifications for wetlands would be minimal if drilling was required. Id. The minutes contain no reference to the ramifications for wetlands caused by the excavation of a 5 x 10 hole. Id. The commission then approved Taylor's application for pipe installation. (Emphasis added.) Id.
There is no evidence that any of the agency members visited the site of the completed work or proposed activity as suggested in the October 26, 1998 meeting minutes. The only record of any visit was that of one Peter Hughes, presumably the town zoning enforcement officer, that consisted of an examination of completed work.
It is clear that substantial evidence does not exist in the record as a whole to support a summary ruling. The only evidence in the record consists of Hughes' testimony regarding past work at the October 26, 1998 meeting and some testimony given regarding the ramifications of drilling with regard to the proposed activity at the November 23, 1998 meeting. However, this information is sparse, at best. There is no evidence that the agency supplemented Hughes' testimony by further investigation or even a site walk. The record also contains no evidence that the agency considered regulations §§ 6.1.a through 6.1.e with regard to either the excavation of the 5 x 10 hole nor the presence of the pipe.
There is no evidence that the agency made a determination that the completed work or proposed activities were not "regulated activities." Furthermore, the agency classifies the application as "summary." (See ROR, Exh. D.) This procedure requires the agency first to find "that a proposed activity is a regulated activity. . . ." (Emphasis added.) (ROR, Exh. G, Reg. § 5.4.) For this reason, it is submitted that when the agency issued its summary ruling on November 23, 1998, it did not do so in compliance with § 5.4 of the regulations because of its failure to consider the standards for decision contained in regulation §§ 6.1.a through 6.1.e. Accordingly, the appeal can also be sustained on this ground.
In her appeal, Dineen alleges that "the Agency failed to require Taylor to submit, and Taylor did not submit, written application information sufficient to satisfy the requirements of the . . . [r]egulations." Specifically, Dineen claims that the agency failed to require: (1) a CT Page 10075 detailed description of the proposed activity pursuant to § 5.2.f of the regulations; a description of alternatives to the proposed activity pursuant to § 5.2.h of the regulations; a description of planned or perceived future activity which will or may be affected by the proposed activity pursuant to § 5.2.i of the regulations; and a detailed site plan pursuant to § 5.2.j of the regulations. (Appeal ¶ 6(c) (1-4.) The agency does not directly respond to these claims, but relies upon the information contained on the application, the testimony of Hughes, and the submission of a site plan as ample support for their decision to approve the work already completed.
Section 5.2 of the regulations states: "[a]ll applications shall include the following information in writing on a form provided by the Agency, which is available from the Town Planner's Office:
 a. The applicant's name, home and business addresses, and telephone numbers.
 b. The owner's name (if applicant is not the owner of the property), home and business addresses, telephone numbers, and written consent to the proposed activity set forth in the application.
 c. Applicant's interest in the land, and certification that the applicant is familiar with all the information provided in the application and is aware of the penalties for obtaining a permit through deception or through inaccurate or misleading information.
 d. Location of the land upon which the proposed activity is to occur.
 e. The geographical location of the property which is to be affected by the proposed activity, including a description of the land in sufficient detail to allow identification of the inland wetlands and water courses, a computation of the area(s) of wetland or water course disturbance, soil type(s) and vegetation.
f. Purpose and description of the proposed activity.
i. If a structure is proposed, a detailed description of its proposed location on the property affected; its proposed use; its type, manner, and duration of construction; its CT Page 10076 ancillary service requirements (e.g. waste disposal systems); and the degree of earth removal or deposition required by the construction.
 ii. If material is proposed to be removed or deposited, a description of its type and toxicity; the exact location of the activity on the property; the duration of the activity; the amount of material and method of removal or deposition; the equipment to be used for such activity; the depths to which removal is proposed, and angle of repose of all slopes before and after the deposition or removal.
g. Names of adjacent property owners.
 h. Alternatives to the proposed activity which can reasonably accomplish the applicant's purpose, and why the proposal to alter wetlands set forth in the application was the most prudent and feasible alternative to use.
 i. A description of any planned or perceived future activity by the applicant which will or may be affected by the activity which is the subject of the application.
 j. Required additional information, including but not limited to a site plan showing existing and proposed conditions in relation to wetlands and water courses, construction and grading schedule, seeding and restabilization plans and schedule, soil sample data, biological evaluation, and any other information the Agency deems necessary to the understanding of what is proposed.
 k. Authorization for the commissioners and agents of the Agency to inspect the property, at reasonable times, both before and after a final decision has been issued.
l. In the case of any application where any portion of the wetlands or water course on which the regulated activity is proposed is located within 500 feet of the boundary of an adjoining municipality, the applicant shall give written notice of the proposed activity, certified mail return receipt requested, to the adjacent municipal wetland agency on the same day as filing CT Page 10077 an Inland Wetland Application with the Woodbury Inland Wetlands Agency."
(ROR, Exh. C, Reg. § 5.2.)
"No application submitted to the Agency shall be deemed complete unless it shall be in such form and contain such information as the Agency deems necessary for a fair determination of the issues. The Agency shall inform all applicants of any additional information needed by it without delay." (ROR, Exh. G, Reg. § 5.1.b.)
The application supplied by the agency, which largely requests the information listed in § 5.2 of the regulations, was completed and submitted by Taylor.[6] (ROR, Exh. A.) It was within the agency's discretion to request any additional information it deemed necessary to consider Taylor's proposed activities. (ROR, Exh. G, Reg. § 5.1.b.) The record does not indicate that the agency requested any additional information of Taylor until the agency meetings on October 26, November 9, and November 23, 1998, where it solicited information solely regarding Taylor's future plans. (ROR, Exh. D; Defendant's Exh. 1.) There is, however, evidence that the agency was aware of those activities that Taylor had conducted without the agency's permission and that Hughes, the zoning enforcement officer, testified as to the condition of the property where such activities took place. (ROR, Exh. D.)
The application provided by Taylor describes the proposed activity in the following manner: "install 4" steel pipe — snowmaking electrical conduit." The application states that a structure is not proposed nor is material to be removed and that the proposed activity would take approximately one week to complete at a cost of $4,000.00. (ROR, Exh. A.) The application does not provide the geographical location of the property to be affected by the proposed activity. (ROR, Exh. A.) The application does not call for, nor does it provide, any information with regard to alternatives to the proposed activity or descriptions of future activities which may be affected by the proposed activity. Id.
The application provided by the agency is in substantial compliance with § 5.2 of the regulations and Taylor completed the application as required. At the agency meetings, the agency solicited and received some additional information regarding Taylor's past work and proposed activities. Such information included a description of the proposed activities and past work. Additionally, a site plan was submitted by Taylor and the testimony given by Hughes included some reference to the location of the past work.
It is noteworthy, however, that the record does not indicate that CT Page 10078 Taylor provided, or that the agency required, any information regarding alternatives to the past work or proposed activities or descriptions of planned or perceived future activities to be affected by the past work or proposed activities. The application form provided by the agency makes no inquiry as to these issues. While § 5.1.b of the regulations gives the agency considerable discretion in the information required of an applicant, § 5.2 clearly states that the applicant shall provide alternatives to the proposed activity as well as a description of "any planned or perceived future activity by the applicant which will or may be affected by the activity which is the subject of the application." (ROR, Exh. G, Reg. § 5.2.i.)
Based upon the foregoing, the appeal can be sustained on the ground that the agency did not follow its regulations with respect to the application process. The agency did not adhere to § 5.2 by failing to require information regarding alternatives or the effect of the proposed activity upon possible future activities.
Accordingly, the appeal is sustained on the grounds that the agency failed to comply with its regulations when reviewing and approving the application, the agency's decision is not supported by substantial record evidence and the agency failed to follow its regulations in the application process.
 ___________________, J. THOMAS G. WEST